CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 0 8 2007

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIE T. FITZGERALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:05CV00782 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ENNIS BUSINESS FORMS, INC. ) | |
| a/k/a ENNIS, INC. ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendant. ) | |

This matter is before the court on the defendant's motion for summary judgment.[1] A hearing was held on this matter on December 8, 2006. For the reasons stated below, the defendant's motion will be granted as to all counts.

The plaintiff brings several claims against his employer, Ennis Business Forms ("Ennis"). The plaintiff claims relief for employment discrimination on the basis of age, race, and gender under the Age Discrimination in Employment Act of 1996 (ADEA), 29 U.S.C. §623, 42 U.S.C. §1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2. The plaintiff also alleges that he was subject to retaliatory conduct in violation of 42 U.S.C. §2000e-3 and 29 U.S.C. § 623(d). The plaintiff's final claim is for breach of the Negotiated Agreement entered between the parties pursuant to a settlement reached after the plaintiff filed his first Equal

---

[1] In its original motion, Ennis failed to expressly move for summary judgment on Fitzgerald's 42 U.S.C. § 1981 claim. Ennis did move for summary judgment of Fitzgerald's § 1981 claim at the hearing. Ennis has since clarified its motion to include a motion for summary judgment on the § 1981 claim. The plaintiff does not object. Because there is no objection on the matter and because the analysis of the § 1981 claim is identical to the analysis of the Title VII claim, as noted below, the court considers the two claims simultaneously.

1

Employment Opportunity (EEO) claim against the defendant. The court has jurisdiction over Fitzgerald's claims of discrimination and retaliation pursuant to 28 U.S.C. §1331. The court has supplemental jurisdiction over the plaintiff's breach of contract claim pursuant to 28 U.S.C. §1367.

**Factual Background**

Ennis is a printed products manufacturer specializing in business forms and promotional materials. Ennis' facility in Chatham consists of an Imprint Factory, which employs 21 people, and a Custom Plant, which employees 134 people. The instant action involves employment at the Custom Plant. There are three shifts at the Custom Plant: the first shift runs from 7 a.m. to 3 p.m., the second shift runs from 3 p.m. to 11 p.m., and the third shift runs from 11 p.m. to 7 a.m. The hourly employees at the Custom Plant are members of the United Food & Commercial Workers International Union, Local 400 ("the union"). Fitzgerald is not an hourly employee and is not covered under the collective bargaining agreement (CBA) between the union and Ennis.

Fitzgerald began working for Ennis in its Chatham, Virginia facility on July 28, 1965, and continues his employment there to this day. He is a 58 year-old African-American man. Fitzgerald was first promoted to a position as a supervisor in May 1979. He served as the third-shift pressroom supervisor from May 1979 until April 2001. On April 25, 2001, Fitzgerald was transferred to a position as the first-shift supervisor of the Custom Plant's Salesbook and Register Forms Department, where he served until August 9, 2004. On that day, Fitzgerald was transferred back to his previous position as third-shift supervisor for the pressroom. The plaintiff bases most of his complaint on that transfer. Fitzgerald filed his complaint on December 22,

2005. On or about February 13, 2006, Fitzgerald was transferred back to the first shift as the pressroom supervisor.

During his time with Ennis, Fitzgerald has filed three EEO claims against his employer. Fitzgerald filed his first EEO claim against the company on January 20, 1999, claiming that he was denied a promotion to the position of Assistant Plant Superintendent because of his race and age. On March 30, 1999, Fitzgerald and Ennis reached a settlement agreement regarding that claim. In exchange for Fitzgerald's withdrawal of the EEO claim, Ennis agreed to place Fitzgerald on "the next available day shift for which he is reasonably qualified." The agreement provided that in the meantime, Fitzgerald would remain on the third shift. In July 2000, Fitzgerald filed his second EEO claim alleging that he was denied a vacant first-shift position in violation of the agreement. Fitzgerald withdrew that claim. As previously noted, Fitzgerald was moved to a first-shift supervisory position on April 25, 2001.

Fitzgerald filed his most recent EEO claim on April 15, 2005. At that time, he was working as a third-shift supervisor after being transferred from day shift to night shift on August 9, 2004. In his complaint, Fitzgerald stated that he believed he was transferred from the first shift back to the third shift because of his race and gender in violation of Title VII and 42 U.S.C. §1981 and because of his age in violation of ADEA. He also stated that he believed the action was taken in retaliation for his previous EEO claim against the company, which would constitute a violation of 42 U.S.C. §2000e-3 and 29 U.S.C. § 623(d). He further stated that he believed that Ennis' actions breached the 1999 settlement agreement between the parties. Fitzgerald received a notice of right-to-sue dated September 29, 2005, from the Equal Employment Opportunity Commission. His complaint was filed within 90 days of that notice.

The transfer on which Fitzgerald bases his claims was part of the Chatham plant restructuring that occurred in 2004. In his affidavit, Gusler, the general manager of the Chatham plant, states that during the summer of 2004, Ennis' corporate headquarters began pressuring him regarding the Chatham facility's diminishing profits. Ennis' headquarters considered the facility's supervisor-to-employee ratio to be too high, resulting in excessive payroll costs. To offset the decreasing profits, Gusler was instructed to reduce the number of supervisors. Before restructuring, the Custom Plant had ten supervisors: seven worked first shift, two worked second shift, and one worked third shift. The seven first-shift supervisors supervised six departments. Fitzgerald was one of the first-shift supervisors.

In deciding how to reduce the number of supervisory positions, Gusler first determined which positions could be eliminated based on the workload of each department. He eliminated positions by consolidating departments. He then decided which supervisors would have to be eliminated based on seniority, skills, and the need to maintain continuity of operations. Gusler reduced the number of first-shift departments from six to four and reduced the number of supervisors from seven to four. Two of the first-shift departments, Composition and Collating, retained the same basic structure and the same supervisors, Johnnie Bennett and Kathy Arrington. The other four first-shift departments merged to become two departments with one supervisor each, Curtis Kendrick and Kenneth Dalton. Fitzgerald's department, Salesbook and Register Forms, was merged with the Pressroom department. Kenneth Dalton became supervisor of the resulting Pressroom, Salesbook, and Register Forms department, and Fitzgerald was transferred to third shift.

4

In considering what supervisory positions to eliminate, Gusler states that he undertook the task with reference to the standards set forth in the CBA. The CBA provides that any layoffs shall occur in reverse order of seniority, so long as the efficient operation of the plant is not affected and the remaining employees can perform the needed tasks. The CBA defines seniority with reference to length of time with the company. Of the four supervisors remaining in first-shift positions after the restructuring, three had worked as a supervisor longer than Fitzgerald. However, one of those three, Johnnie Bennett, had not been with the company as long as Fitzgerald. The fourth supervisor who retained a first-shift position, Kathy Arrington, did not have seniority over Fitzgerald. It is undisputed, however, that Arrington had computer skills that were unique among Ennis supervisors and were necessary to her position as supervisor of the Composition Department.

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law only where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). On motion for summary judgment, the court's inquiry is the same as when directing a verdict, namely, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court may issue summary judgment despite the existence of contested facts if those facts are immaterial and the dispute is not genuine. A fact is material when it can affect the outcome of the suit under

governing law. *Id.* at 248.[2] A dispute is genuine only when it is "such that a reasonable jury could return a verdict for the non-moving party." *Id.* When ruling on a motion for summary judgment, the court does not necessarily need to make findings of fact, but doing so can be helpful. *Id.* at 250.

As the non-moving party who will bear the burden of proof at trial, Fitzgerald is required to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). He cannot merely rely on his pleadings. *Id.* The Supreme Court explained the evidentiary requirements that apply to Fitzgerald here saying that the rule "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In addition, Fitzgerald "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

## PLAINTIFF'S DISCRIMINATION CLAIMS

Title VII makes it an "unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA tracks that language to make such discrimination because of an individual's age likewise unlawful. 29 U.S.C. §623(a)(1). In the absence of direct evidence of discrimination, the court analyzes a claim of employment discrimination on the basis of age,

---

[2]In *Liberty Lobby*, the Court went on to explain that "while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.*

6

gender, or race under the three-prong burden-shifting standard first developed in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). To make a prima facie showing of discrimination based on age, race, or gender, Fitzgerald must allege sufficient facts to show (1) that he is a member of a protected class; (2) that he has suffered an adverse employment action; (3) that at the time of that action, he was performing his duties to the level of the employer's legitimate expectations; and (4) that the position remained open or was filled by a similarly qualified applicant who was not a member of the protected class. *Id.*[3] The evidence needed to prevail on the fourth prong may vary depending on the facts of the case. *McDonnell Douglas*, 411 U.S. at 802 n.13. In determining whether the allegations are sufficient, the court is mindful that the purpose of the fourth prong is to screen out those cases where the facts alleged give rise to an inference of non-discrimination. *See Miles v. Dell, Inc.*, 429 F.3d 480, 488 n.5 (4th Cir. 2005). By screening the cases that suggest non-discriminatory employment decisions, the court is left with a presumption of discriminatory motive. *Id.* If Fitzgerald meets the requirements of showing a prima facie case of discrimination, Ennis has the burden of production to demonstrate a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. If the court finds that Ennis has met this burden, Fitzgerald can survive the motion for summary judgment only by showing by a preponderance of the evidence that Ennis' stated reasons are pretextual. *Id.* at 804.

The first and third elements of Fitzgerald's prima facie case are uncontested. With regard to the second and fourth elements, the court finds that the plaintiff has failed to allege facts from

---

[3]Because the requirements for establishing a prima facie case of discrimination under 42 U.S.C. § 1981 are the same as those of the Title VII action, the court considers the two in conjunction. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004).

7

which the court can infer that Ennis' employment decisions were made with a discriminatory motive.

An adverse employment action is an act that adversely affects "the terms, conditions, or benefits of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001). Termination is not necessary to establish an adverse employment action. At the same time, reassignment alone cannot form the basis of a Title VII claim. Instead, the plaintiff must also show that the reassignment had a significant detrimental effect. *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999). The evidence in this case establishes that the transfer to third shift did not affect Fitzgerald's pay, title, promotional opportunities, or employment status. Instead, Fitzgerald argues that he suffered a significantly detrimental effect because of the inconvenience of working nights and weekends, the loss of job prestige, and the decrease in the level of responsibility.

While the court is sympathetic to the difficulty of changing from a first- to a third-shift position, the inconvenience and stress of a reassignment is generally not sufficient to form the basis of a Title VII claim. *See Boone*, 178 F.3d at 256. Fitzgerald can rely on the inconvenience of working the third shift only in combination with the alleged loss of prestige and decrease in job responsibilities. The court notes that Fitzgerald has not alleged any facts to support the assertion that others viewed his third-shift position as less important than his first-shift position. The court therefore will not consider the alleged loss of prestige in assessing the plaintiff's claim of a detrimental effect.

Fitzgerald's argument that his new position decreased his level of responsibility is stronger, because level of responsibility is one of the specific factors mentioned in *Boone* as

8

supporting a claim for adverse employment action. *Id.* at 256-57. Fitzgerald argues that the transfer had a detrimental effect on his employment conditions because he had less work to do, fewer employees to supervise, and fewer custom orders to fill. Fitzgerald does not present any evidence, however, to suggest that these changes had a detrimental effect on his employment status. The facts of the case suggest otherwise. Fitzgerald remained in his third-shift position for less than two years. After that time, he was again moved to first shift, where he managed a consolidated department and oversaw more operations than in any of his previous supervisory positions. The increase in responsibilities in 2006 indicates that his reassignment did not adversely impact his standing with Ennis. The court finds that Fitzgerald has not alleged facts which support a claim that any decrease in responsibilities detrimentally affected his job status. In sum, Fitzgerald has only presented facts sufficient to show that he was dissatisfied and inconvenienced by his move to third shift. Fitzgerald's unhappiness with the transfer is insufficient to form the basis for a Title VII action. The court therefore must grant summary judgment in favor of Ennis as to Fitzgerald's discrimination claims.

Moreover, even if the transfer to the third shift could have been considered an adverse employment action, Fitzgerald's discrimination claim is also deficient because he does not allege any facts that eliminate the presumption of non-discriminatory motive or that support an inference that Ennis discriminated against him by making distinctions or differences between Fitzgerald and other employees. *See Texas Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 258 (1981); *Miles*, 429 F.3d at 488. Fitzgerald argues that an inference of discrimination arises solely because members of the non-protected classes retained their positions when Fitzgerald was transferred. First, with regard to age, Fitzgerald notes that two of the supervisors allowed to

9

remain on the first shift were younger than he. Second, with regard to gender, Fitzgerald rests his claim on the fact that Kathy Arrington retained her position as Composition Supervisor after the restructuring. Third, Fitzgerald bases his claim of racial discrimination on the fact that he was the only African-American who was transferred to the third shift in the 2004 restructuring, while all of the supervisors who retained their positions were white.

The facts of the case do not support the notion that there was a discriminatory motive in Ennis' decision to allow two younger employees, one woman, and four white employees to remain in their first-shift positions. With regard to the age and race discrimination claims, the plaintiff's focus is too narrow, because he fails to take into account the impact of the restructuring as a whole. As Ennis points out, while younger men and Caucasians were retained in their first-shift positions, three of the employees who lost supervisory positions during the restructuring were younger than Fitzgerald, and two of those men were white. Those men fared far worse than Fitzgerald, who retained his title, pay, and benefits. Because employees outside of the protected class fared worse than Fitzgerald during the restructuring, there is no pattern that might suggest a discriminatory motive. The court finds therefore that Fitzgerald has failed to allege facts sufficient to overcome the inference that Ennis' decisions were based on non-discriminatory motives.

The court finds the plaintiff's claim for gender discrimination even weaker. The plaintiff presents no evidence, other than the fact that a female supervisor was retained in her first-shift position, to support his claim for discrimination. That fact suggests nothing that would give rise to an inference of discrimination. Kathy Arrington was the only female supervisor before or after the restructuring. Fitzgerald does not allege any facts from which the court could infer that Ennis

10

decided to retain Kathy Arrington in her position as Composition Supervisor rather than giving the position to Fitzgerald because of Fitzgerald's gender. To the contrary, the evidence indicates that Arrington possessed specialized skills.

At the hearing before this court, Fitzgerald argued that the fact that Ennis reinstated him to first shift only two months after he filed the instant action permits an inference that the earlier, adverse transfer was for discriminatory or retaliatory reasons. This argument was not presented prior to the hearing. Fitzgerald made no attempt to tie this allegation to any of the his particular claims, but instead asked the court to infer broadly that since Ennis re-transferred him soon after the threat of a lawsuit materialized, Ennis' initial transfer was for illegitimate reasons. However, this assertion is premised on nothing more than speculation. The plaintiff has not alleged facts to support this inference. Indeed, the undisputed evidence supports the conclusion that Fitzgerald was reassigned to first shift when a first-shift position became available. Fitzgerald was transferred back to first shift only after Kenny Dalton retired and left his supervisory position open. At that time, there were only three first-shift positions, and all were occupied by the same supervisors who held the positions after the 2004 restructuring. The court finds the plaintiff's argument totally unavailing to support a claim either for discrimination or retaliation.

Because the court finds that Fitzgerald has not met his burden of demonstrating a prima facie case of discrimination, the court finds it unnecessary to consider the issue of pretext. However, the court notes that the consideration of pretext in the context of the plaintiff's retaliation claim applies to his discrimination claim as well. That analysis shows that even if the plaintiff had alleged sufficient facts to make a prima facie case of discrimination, he does not

11

allege facts sufficient to rebut Ennis' proffered non-discriminatory reasons for its decisions during the 2004 restructuring.

## PLAINTIFF'S RETALIATION CLAIM

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §2000e-3(a). ADEA § 623(d) tracks the language of Title VII. To make a prima facie case of retaliation under either Act, Fitzgerald must show that (1) he engaged in a protected activity, such as filing an EEO claim, (2) that he suffered a materially adverse action, and (3) that there is a causal connection between the protected activity and the materially adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (citation omitted). The dispute between the two parties here rests on the final two elements of Fitzgerald's claim.

While Fitzgerald's transfer to third shift does not constitute an adverse employment action for purposes of his discrimination claim, the court finds that it does for purposes of his retaliation claim. The Supreme Court recently interpreted the materially adverse activity requirement of the anti-retaliation provision to include a broader range of activities than those actionable under Title VII discrimination claims. *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2414 (2006). The plaintiff's burden, as determined by the Court, is to show that "a reasonable employee would have found the challenged action materially adverse." *Id.* at 2415. Materiality is determined by reference to whether the employer's actions are such that they would likely deter a reasonable employee from making an EEO claim. *Id.* Fitzgerald claims that the materially adverse event was Ennis' action in transferring him from first to third shift. Because the plaintiff's burden on this element is lower than for his discrimination claims,

12

and because Ennis' action is significant enough to deter protected activity had it been meant to do so, the court finds that Fitzgerald has met his burden of showing that he suffered a materially adverse action under the standards set forth in *Burlington Northern*.

The crux of the dispute regarding retaliation is focused on whether Fitzgerald's allegations are such as to support a causal connection between his protected activity and his transfer to third shift. Plaintiff can meet this burden through circumstantial evidence. For example, a causal connection may be found to exist based on evidence that Ennis knew of the protected activity, and a close proximity in time between the protected activity and the adverse event. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994). In *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the Court stated that a plaintiff could not show the causal element necessary for a retaliation claim where the employer knew of the protected activity 20 months prior to the adverse action. *Id.* at 273 (dictum). The Court went on to note that of the cases that accept temporal proximity as a basis for causation, all require the proximity to be "very close." *Id.* (citations omitted).

Fitzgerald attempts to establish causation by temporal proximity. He argues that Ennis' decision to transfer him to third shift in 2004, in combination with the pattern of antagonistic behavior toward him between 2000 and 2004, constitutes retaliation for his EEO complaints of unlawful discrimination filed on January 20, 1999 and July 28, 2000. Because Fitzgerald's claim rests on two different forms of adverse action, the court initially will consider whether the plaintiff has alleged facts sufficient to show that the pattern of antagonistic behavior caused harm serious enough to be considered an actionable adverse action. The court finds that the plaintiff has not. First, the court notes that the plaintiff abandoned two of his allegations of antagonistic behavior during deposition. Those will not be considered. The remaining allegations concern

13

day-to-day management decisions. During his deposition, Fitzgerald focused on one incident in which he felt he was being micromanaged regarding the amount of time allotted for one of his employees to perform her work. Fitzgerald said that he felt that he was the victim of a pattern of retaliatory and discriminatory conduct, but he could not cite any other incidents which he believed to be retaliatory. Other conduct cited in his memorandum includes Ennis' failure to provide a time clock or computer for Fitzgerald's department, Ennis' refusal to allow Fitzgerald to alter his employee's work schedules or allow them to work overtime, and Ennis' refusal of a vacation request. Nothing in these complaints suggests the level of materiality required of an adverse employment action in a plaintiff's retaliation claim. None of these actions are such as would deter a reasonable employee from making an EEO claim. Rather, Fitzgerald complains of the types of decisions that management makes on a daily basis. The harm suffered by Fitzgerald is not significant and is common to the "petty slights and minor annoyances that often take place at work and that all employees experience." *Id.* Moreover, the court notes that Fitzgerald does not specify the dates on which these actions occurred. Without such information, the plaintiff cannot rely on these grievances to establish temporal proximity.

The court is left to consider the transfer to the third shift as the sole adverse employment activity. Because that transfer occurred nearly four years after the plaintiff's EEO filing, the court finds that the plaintiff has failed to allege facts from which the court could infer causation based on temporal proximity. It follows that plaintiff's claim of retaliation must fail.

### DEFENDANT'S PROFFER OF LEGITIMATE REASONS

If the plaintiff had alleged facts sufficient to support a prima facie case of either retaliation or discrimination, the court would be required to proceed to the second prong of the *McDonnell Douglas* test. Under the second prong, the defendant has the burden to proffer a non-

14

discriminatory and non-retaliatory reason for its adverse employment action. Ennis' burden at this step is a burden of production only and does not involve a credibility assessment. *See St. Mary's Center v. Hicks*, 509 U.S. 502, 509 (1993). All that is required for the court to determine is whether Ennis' stated reasons, if taken as true, would permit the conclusion that there was a legitimate reason for its actions. *Id.* Ennis explains that its decisions and actions during the 2004 restructuring were based on legitimate company needs. Gusler states that he was told by his superiors in the company that he needed to cut the number of supervisory positions. Gusler decided which supervisors to cut by considering the overall need to maintain continuity of operations and the individual skill set and seniority of each of the supervisors. Kathy Arrington was the only supervisor allowed to remain on the first shift who had been in a supervisory capacity for a shorter time than Fitzgerald. But, Kathy Arrington is the only supervisor qualified to manage the computer-intensive Composition Department. The court finds that Ennis has proffered a legitimate reason for its action.

## PLAINTIFF'S SHOWING OF PRETEXT

Had Fitzgerald alleged facts sufficient to make a prima facie case for either employment discrimination or retaliation, the burden would shift back to him after Ennis met its burden in offering a nonactionable reason for the adverse employment action. At this stage, Fitzgerald would be required to allege facts to support the assertion that Ennis' proffered reasons are pretextual, and that retaliation was the real reason for the adverse action. *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004). For Fitzgerald to succeed, he must allege facts sufficient to allow the court to infer that "the reason was false, and that discrimination was the real reason." *St. Mary's Center*, 509 U.S. at 523–24. The court finds that Fitzgerald has not met this burden. Therefore, even if Fitzgerald had established a prima facie case of either retaliation or

15

discrimination, he could not withstand defendant's motion for summary judgment because he has not alleged facts sufficient to discredit Ennis' stated legitimate reasons for its restructuring decisions.

Fitzgerald offers only one argument to rebut Ennis' stated legitimate reason for its restructuring decisions. Fitzgerald asserts that Johnnie Bennett, who was retained as first shift supervisor of the collating department, did not have seniority as Ennis states. Fitzgerald argues that this rebuts Gusler's statement that he used the CBA as a guide in determining who to cut from first-shift positions. The difference between Ennis' and Fitzgerald's positions depends on the definition of seniority. Bennett had not been employed by Ennis as long as Fitzgerald, but he had been a supervisor longer. Fitzgerald argues that Ennis' stated justification is disingenuous because the CBA defines seniority simply by length of time with the company. The justification at issue is found in Gusler's affidavit. In that affidavit, Gusler states that he made his decisions by first determining which departments to consolidate. After the six departments were consolidated into four, Gusler determined who to cut. He states first that he made his decisions with reference to the CBA standards which articulated that layoffs were to be done in reverse order of seniority to the extent that the work and operation of the plant would not be affected. Later in his explanations of each decision, he refers to the seniority of the employee solely with reference to the number of years in a supervisory position. The court finds that there is no genuine dispute in the factual record on which the plaintiff can rely to show pretext. Gusler's statements show that he considered seniority to mean the length of time in a supervisory capacity and that definition is completely in line with his decision to retain Bennett. The court therefore determines that even if the plaintiff had met his burden of making a prima facie case of either discrimination or retaliation, he has not alleged facts sufficient to give rise to an inference that

16

Ennis' stated reasons are pretextual. The plaintiff's claim is therefore not sufficient to withstand this motion for summary judgment.

## PLAINTIFF'S BREACH OF CONTRACT CLAIM

Fitzgerald argues that his transfer from first to third shift in 2004 constitutes a breach of the March 30, 1999 settlement he reached with the company subsequent to his January 20, 1999 EEO claim. The January, 1999 claim stated that Fitzgerald believed that he was denied promotion on the basis of race and age. In the Negotiated Settlement Agreement reached in that matter, Ennis agreed to "place [Fitzgerald] in the next available day shift position for which he is reasonably qualified." Fitzgerald was placed on first shift on April 25, 2001. Fitzgerald argues that Ennis breached the agreement when it transferred him back to third shift on August 9, 2004. Ennis denies that it breached the agreement, arguing that the agreement does not promise that a future transfer to the first shift would be permanent. The court concludes that summary judgment for Ennis is appropriate in this breach of contract claim. Even when viewed in the light most favorable to Fitzgerald, the facts cannot support a claim that Ennis breached its agreement or transferred him in bad faith. The court will grant Ennis' motion for summary judgment on Fitzgerald's breach of contract claim.

It is undisputed that Ennis fulfilled the explicit terms of the settlement agreement when it transferred Fitzgerald to the first available day shift supervisory position. Fitzgerald argues, however, that even though it was not written into the agreement, the understanding between the parties was that Fitzgerald would be permanently reassigned to the first available day shift position. Fitzgerald states that he bases this understanding of the parties' intentions on Ennis' prior custom and practice. Fitzgerald does not argue that the language of the agreement is ambiguous. Instead, Fitzgerald cites *Doswell Limited Partnership v. VEPCO*, 468 S.E.2d 84

17

(Va. 1996), for the proposition that custom or usage can be used to interpret phrases or terms in a contract that are of themselves unambiguous. Fitzgerald fails to acknowledge, however, that to interpret the Negotiated Settlement Agreement to provide for a permanent first-shift position would require the court to insert terms into the contract, not merely interpret what is written. The court cannot add terms to the contract. *Virginia Ry. Co. v. Avis*, 98 S.E. 638, 640 (Va. 1919). The court therefore finds that Fitzgerald has failed to allege facts sufficient to support a claim that a breach occurred.

Additionally, Fitzgerald argues that the fact that Ennis returned him to third shift after three years and only moved him back to first shift once he filed suit shows that the 2001 transfer was done in bad faith as a way of nominally fulfilling the express terms of the agreement. The court finds that Fitzgerald has not alleged facts sufficient to support a claim that the 2001 transfer was in bad faith. Most of the facts presented to the court regarding Fitzgerald's transfer and the 2004 restructuring are uncontested. Subsequent to the agreement, Fitzgerald was transferred to the first available first-shift supervisory position. He remained in that position for three years. In 2004, Ennis' management was directed to downsize its operations, specifically by cutting supervisors. The restructuring required that three first-shift supervisors be cut. One was terminated, one retired, and the third, Fitzgerald, was moved to third shift. Fitzgerald's transfer back to third shift lasted less than two years. During that time, Fitzgerald's job title and pay did not change. He suffered no pecuniary damages. He was returned, once again, to a first-shift supervisory position when the first available supervisory position became available in 2006.

These facts clearly do not support the contention that the 2001 transfer to first shift was a ruse designed to give the mere appearance of fulfilling the 1999 agreement. Specifically, the court is persuaded that Ennis did not act in bad faith because Fitzgerald held the first-shift

18

position for three years after the initial transfer. After he was transferred back to third shift, Fitzgerald held that position for less than two years and was transferred back to first shift as soon as a position became available. There is no evidence to suggest, and Fitzgerald does not contend, that the downsizing in 2004 was contrived, or that the elimination of positions was undertaken for any purpose other than to save money and make the operation more efficient. Gusler was told what to do and only controlled how it was to be done. He had to make difficult decisions, and other Ennis employees fared far worse than Fitzgerald. The court finds that these facts do not support the breach of contract claim. The agreement simply did not contemplate that Fitzgerald would be allowed to remain on the first shift in perpetuity. The court will grant Ennis' motion for summary judgment as to Fitzgerald's breach of contract claim.

## CONCLUSION

With regard to the plaintiff's claims of employment discrimination and retaliation, the court finds that Fitzgerald has not alleged facts sufficient to allow the court to infer that Ennis had a discriminatory or retaliatory motive for transferring him to third shift during the 2004 restructuring. The court also finds that the plaintiff has not alleged sufficient facts to support the argument that Ennis breached the 1999 settlement agreement when it transferred him from first shift in 2004. For the foregoing reasons, the court will grant the defendant's motion to dismiss all counts in the plaintiff's complaint.

The Clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER this 8th day of January, 2007.

*[signature]*

United States District Judge